# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Tadesse Gebreegziabher

*(Write the full name of each plaintiff who is filing this complaint.  If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**v.**

Eberspaecher North America, Inc.

*(Write the full name of each defendant who is being sued.  If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No.

_____

*(to be filled in by the Clerk's Office)*

Jury Trial:    ☑ Yes    ☐ No
         *(check one)*

# Complaint for Employment Discrimination

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Dr. Tadesse Gebreegziabher |
| Street Address | P O Box 2994 |
| City and County | Dearborn |
| State and Zip Code | MI 48123 |
| Telephone Number | 313-283-7395 |
| E-mail Address | Gebreeg17@gmail.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Eberspaecher North America, Inc. |
| Job or Title (if known) | |
| Street Address | 29101 Haggerty Road |
| City and County | Novi, Oakland County |
| State and Zip Code | MI 48377 |
| Telephone Number | (248) 994-7010 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

Defendant No. 3

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

Defendant No. 4

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

**C.    Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | Eberspaecher North America, Inc. |
| Street Address | 29101 Haggerty Road |
| City and County | Novi, Oakland County |
| State and Zip Code | MI 48377 |
| Telephone Number | (248) 994-7010 |

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

## II.   Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐  Other federal law *(specify the federal law)*:

☑  Relevant state law *(specify, if known)*:

Elliott-Larsen Civil Rights Act

☐  Relevant city or county law *(specify, if known)*:

**III.    Statement of Claim**

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.
☑    Termination of my employment.
☑    Failure to promote me.
☐    Failure to accommodate my disability.
☑    Unequal terms and conditions of my employment.
☑    Retaliation.
☐    Other acts *(specify)*:

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)
From early February 2015 until June 9, 2020.

C.    I believe that defendant(s) *(check one)*:

☐    is/are still committing these acts against me.
☑    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☑    race   African American
☑    color   Black
☐    gender/sex   _____
☐    religion   _____
☑    national origin   Ethiopian
☑    age.  My year of birth is 01/01/1964   .  *(Give your year of birth only if you are asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

_____

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

E.    The facts of my case are as follows.  Attach additional pages if needed.

See attachment - Employment Discrimination Complaint.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

**IV.   Exhaustion of Federal Administrative Remedies**

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

  First complaint filed on March 10, 2020; second complaint filed on July 23, 2020

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☑   issued a Notice of Right to Sue letter, which I received on *(date)*

  January 19, 2021 by email (lawyer) and  January 26/2021 by mail.
  *(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑   60 days or more have elapsed.

☐   less than 60 days have elapsed.

**V.   Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. Attach additional pages if needed.


See attachment - Employment Discrimination Complaint.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____ April 15 _____, 20 21 _____ .

Signature of Plaintiff _____

Printed Name of Plaintiff   Dr. Tadesse Gebreegziabher

8

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

**Additional Information:**

See attachments - Right of to Sue letters from EEOC.

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dr. Tadesse Gebreegziabher

**DEFENDANTS**

Eberspaecher North America, Inc.

(b) County of Residence of First Listed Plaintiff   Wayne County, Michigan
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Oakland County, Michigan
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Proceeding pro se

Attorneys *(If Known)*

Not known.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights ☐ 830 Patent | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle | ☐ 370 Other Fraud ☐ 371 Truth in Lending | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17, Age Discrimination in Employment Act
Brief description of cause:
Discrimination and retaliation based on race, national origin, and age.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
April 15, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　■ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.　　　　Other than stated above, are there any pending or previously
　　　　　discontinued or dismissed companion cases in this or any other　☐ Yes
　　　　　court, including state court? (Companion cases are matters in which　■ No
　　　　　it appears substantially similar evidence will be offered or the same
　　　　　or related parties are present and the cases arise out of the same
　　　　　transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TADESSE GEBREEGZIABHER,
        Plaintiff,

-vs-

EBERSPAECHER NORTH AMERICA, INC.

        Defendant.

---

Tadesse Gebreegziabher
Plaintiff, *Pro Se*
PO Box 2994
Dearborn, MI 48123
(313) 283-7395
Gebreeg17@gmail.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND[1]

    Plaintiff, Tadesse Gebreegziabher, *pro se,* complains against Defendant Eberspaecher North America, Inc. as follows:

## PARTIES, JURISDICTION, AND VENUE

    1. Plaintiff Dr. Tadesse Gebreegziabher ("Gebreegziabher") is an individual who

resides in Wayne County, Dearborn, Michigan.

---

[1] This complaint and jury demand were drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). They were prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690

1

2. Defendant Eberspaecher North America, Inc. ("Defendant" or "Eberspaecher") is a Michigan corporation with its principal place of business in Oakland County, Michigan at 29101 Haggerty Road, Novi, MI 48377.

3. Plaintiff brings claims in this lawsuit under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, and the Elliott-Larsen Civil Rights Act of 1976.

4. Defendant runs an operation out of Novi, Michigan, and employed Plaintiff at its Novi location.

5. This Court has subject matter jurisdiction over this matter because Plaintiff's claim arises under federal law.

6. Venue is proper in the Eastern District of Michigan because all of the events giving rise to this case and controversy occurred in the Eastern District of Michigan and because Defendant resides within the Eastern District of Michigan. Defendant operates the corporation where Plaintiff was employed in this judicial district within the meaning of 28 U.S.C. §1391(c) and, accordingly, venue lies in this judicial district.

7. Prior to filing this lawsuit, Plaintiff timely filed a complaint of discrimination and received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC").

8. Prior to the filing of this action, Gebreegziabher filed a timely written charge of retaliation and discrimination with the EEOC.

9. On January 15, 2021, the EEOC issued a determination closing the charges (Charge Nos. 471-2020-02298 and 471-2020-03297) and extending Mr. Gebreegziabher a notice of right to sue within 90 days.

10. This lawsuit is being filed within 90 days of Gebreegziabher's receipt of the right-to-sue letter issued by the EEOC. (See attached Dismissal and Notice of Suit Rights, dated January 15, 2021).

## STATEMENT OF FACTS

11. Plaintiff was at all relevant times employed by Defendant.

12. Plaintiff is a 56-year-old African American male of Ethiopian National origin.

13. Plaintiff began working for Defendant in September 2013 with thirteen years of engineering experience, and excellent academic qualifications (bachelor's degree, BSc, Master's Degree, MSc, and Doctorate Degree (PhD) in Mechanical Engineering).

14. Plaintiff was initially employed as a Product Engineer.

15. Around February/March of 2015, Plaintiff's immediate manager (Dale Boone) at Eberspaecher requested that Plaintiff complete a new job classification form for Product Engineer I position to transition from his job title as "Product Engineer" that he held since the beginning of his employment with Defendant.

16. Plaintiff did not accept the invitation because his skillset, work experience and academic credentials made him qualified for, at least, the Product Engineer II

position and accordingly complained to his HR manager at Eberspaecher as he felt this was a demotion as this job title was given to newly hired entry level engineers.

17. Plaintiff was later allowed by his immediate manager to complete the Product Engineer II position form after communication with HR, which he was granted.

18. Around February/March of 2015, Plaintiff brought a request for pay adjustment for the job classification change from Product Engineer I to Product Engineer II. The HR manager noted the request for pay adjustment and recommended that Plaintiff escalate to his immediate manager and HR Vice President.

19. In February/March of 2015, the company failed to make any pay adjustment and the discriminatory practice to withhold his career growth continued until 2020 by using its subjective Performance Review Process to limit Plaintiff's performance.

20. At the end of 2016 and early in 2017, another follow-up request by Plaintiff for job classification review and salary adjustment (as other colleagues with similar job functions and lower academic qualification were holding higher job titles, such as Lead Engineers) also failed.

21. At the end of 2016 and early in 2017, Plaintiff applied for an internal job within the Passenger Car Department in Novi, Michigan office for a Product Engineer Position for Hyundai Motor Company Projects. However, the application was denied without any reason by management. Defendant's management failed to apply its Equal

Employment Opportunity internal policy, state, and federal laws in its decision to hire another engineer from South Korea.

22. In early 2017, management also hired another individual (an engineering manager) with South Korean roots (American) from Michigan without any internal announcement for an open position for a manager, evidence of systematic discrimination against Plaintiff.

23. In early 2017, Plaintiff was also instructed to report to the new manager within the Passenger Car Department and train both the new manager and new hire from South Korea about the company's internal procedures in product design and development process until the end of 2017.

24. Near the end of 2017, Plaintiff was transferred to work on Ford Projects under another manager by the name Bob Turkovich.

25. In November 2018, Plaintiff complained to the HR director (Peter Marriot) that even though positions were not posted, Plaintiff should have been promoted to "Lead Engineer" position after a certain number of years based on his long work experience and impeccable academic qualifications (about 20 years of work experience and education - **BSc, MSc, and PhD degrees in Mechanical Engineering**) like his Caucasian and other Asian co-workers. Plaintiff also asked HR director (Peter Marriot) for lateral transfer within the USA or internationally per company policy.

26. In 2018 and 2019, Plaintiff reported to the HR manager and director several cases of discrimination incidents, such as the denial of career growth but not limited to

5

denying lateral transfers or applying for jobs within and outside the engineering department. Concerns regarding transparency in performance reviews where the plaintiff was told by immediate supervisor that management had made decisions not to give a rating/scoring of above "3/5" during performance review meetings to deny career development of the plaintiff.

27. The last position Plaintiff held until the wrongful termination date on June 9, 2020, was **Product Engineer II**, without any career growth or promotion.

28. In 2015, the discriminatory/retaliatory treatment started badly when a coworker without any bachelor's degree in mechanical engineering was promoted to be his supervisor without any internal announcement which is in contravention to company policy and violating (equal employment opportunity), leaving Plaintiff without any career growth or promotion for about seven years.

29. Plaintiff's last position at the time of termination on June 9, 2020 was as a **Product Engineer II**, instead of the "Lead Product Engineer" Position that other colleagues with less or equivalent job experience and academic qualifications might have held.

30. In September 2019, Plaintiff's co-worker, Nathan Zachry, was promoted to become Plaintiff's supervisor without any internal announcement for an open position. No direct supervisory role for the year of 2019 except approving vacations and expense reports.

31. In February/March 2020, Plaintiff's supervisor, Nathan Zachry, and his manager, Bob Turkovich, asked Plaintiff to sit with them for a final 2019 Year Performance Review and handed him a Performance Improvement Plan ("PIP") for 90 days.  They also asked Plaintiff to agree to both the Performance review and PIP and sign all the documents. Plaintiff disagreed with the performance review, but Plaintiff was given 24 hours to meet the request.

32.   Plaintiff held meetings with HR manager and escalated a complaint of discrimination based on race/ethnicity, national origin and retaliation including potential physical harm. Plaintiff requested HR to investigate the discrimination practice during his employment with the company as well as an investigation into the immediate supervisor Nathan Zachry and for management and HR to investigate the Performance Review Plan and process for the 2019 that did not follow company policy.

33. After the complaint, Plaintiff was subjected to intense scrutiny and criticism including harassment by coworkers. These included instances of higher-level managers hostile environment by blocking passages in the corridors of the Novi Office which were quite common and threatening.

34. HR manager (Stephanie Andrews) was not cooperative in protecting or relieving Plaintiff from discrimination, harassment, and the hostile work environment.

35. On March 10, 2020, Plaintiff filed an employment discrimination complaint with the EEOC (complaint against immediate supervisor by the name Nathan Zachary and manager Bob Turkovich as well as HR Manager, Stephanie Andrews) after

Plaintiff felt that the three people were conspiring against him and failed to honor their commitment to fix the wrong performance review in their prior meeting with him.

36. As was done since 2018, on March 11, 2020, Plaintiff briefly met with the HR director (Peter Marriot) and asked him if Plaintiff could schedule an urgent meeting to discuss issues about additional employment discrimination and he expressed his willingness to sit with Plaintiff and hence asked him to schedule a meeting for March 13, 2020. He also instructed Plaintiff to send an email request to his immediate engineering supervisor and manager as well as the HR manager for them to suspend any Performance Review related activities until Plaintiff discussed the matter with him.

37. For the 2018 Year Performance review, Plaintiff had an overall performance review rating of "4/5" for the first time by Bob Tonkovich but without any meaningful change to his pay grade/career growth. After Plaintiff made several complaints, he was subjected to increased scrutiny and criticism as well as worse performance evaluation (overall rating of "2/5") for the 2019 Performance Review which took place in February/March of 2020 from his new supervisor that he did not technically report to for most of the time in 2019. The performance review for 2019 was pure retaliatory and discriminatory action that violates the law.

38. On March 13, Plaintiff went to see the HR director, Peter Marriot, in his office per their scheduled appointment. However, Mr. Marriot declined to meet with Plaintiff, asserting that the employment discrimination complaint was a legal matter that was already filed with the EEOC.  He instructed Plaintiff to obey all instructions

8

from his immediate engineering supervisor and manager as well as the HR manager moving forward. However, before ending the meeting, Plaintiff stated that he did not agree to the performance review and the PIP at all and explained to the supervisor that Plaintiff was being treated very differently than his coworkers. Plaintiff reported that the Plan and Review process did not follow company guidelines/standards.

39. The Performance plan was never completed at the beginning of the year. Instead, it was drafted at the end of September 2019 and completed and signed on October 2019.

40. According to the performance review process, the performance plan was supposed to be completed at the beginning of the year, the mid-year review was supposed to happen in July and the final year review in January the following year. The company violated its internal rules and manipulated the process to discriminate against Plaintiff.

41. Plaintiff did not have any mid-year PDA review per company policy. There was not any timely performance plan to begin with as stated above.

42. Plaintiff's salary was reduced temporarily by 20% effective May 2, 2020 due to COVID-19 until his termination on June 9, 2020 without any formal agreement on salary reduction. The company announced that it took this measure across the board to save money without providing Plaintiff with any proof or explanation.

43. Upon information and belief, the company raised the salary to 90% of the previous year's salary range for each employee after the Plaintiff's termination of employment on June 9, 2020.

44. Around March 9, 2020 Plaintiff's immediate supervisor asked Plaintiff to write daily "Night Letters" for updating the status of open issues for all Ford Projects for which Plaintiff was responsible for but never got feedback or support on engineering issues including those about resources for three months.

45. The company failed to implement the PIP that was supposed to be implemented and scheduled for the 30-day, 60-day and 90-day review dates. No actual meetings took place for the 30-day, 60-day and 90-day reviews at all. All scheduled PIP meetings were cancelled or missed until his employment termination, except the daily "Night Letter."

46. The daily "Night Letter" task continued for a while and was dropped altogether for a couple of weeks until Plaintiff was asked to restart sending them again in May 2020, which Plaintiff continued until his termination on June 9, 2020. Technically, the Night Letter task was one of the activities in the PIP. Plaintiff's supervisor told him at different times when Plaintiff called him for support on urgent issues/matters that he was not reading his emails at all. Plaintiff also confirmed that his supervisor was not interested in reading his "Night Letters."

47. Immediately after Plaintiff's complaint with the EEOC, Plaintiff began to experience a very hostile work environment and daily harassment by his immediate

supervisor (Nathan Zachary) and a program manager (Victor Gastelum) as well as designers and other colleagues. This was coordinated harassment and had the impact of creating a very humiliating and frustrating environment where at times, Plaintiff considered leaving the company and was experiencing stress, anxiety, and sleepless nights. Plaintiff's coworkers (such as George Hawkins an African American employee) witnessed the daily harassment and hostile work environment in which Plaintiff was working.

48. The impact of the coordinated harassment and hostile environment and retaliation on Plaintiff led him to consider leaving the company. Plaintiff experienced stress, anxiety, and sleep deprivation until there was not any time left to seek treatment. Plaintiff was also subjected to long work hours and seeking engineering resources (approvals of overtime pay for designers from their respective supervisors) including being forced to work on weekends to support design resources which would be available only on weekends on Overtime pay.

49. At the time of termination, Plaintiff was working on multiple Ford Projects.

50. Resources for completing his projects, like design tasks, were either sabotaged or delayed and during weekly program review meetings, resource priorities were given to other engineers. Due to lack of resources which the Plaintiff was documenting in the "Night Letters," the projects would run late to meet critical program timelines. Those resources were denied or purposely delayed, and Plaintiff was

11

documenting the design resource risks in his daily "Night Letter," which was sent to his supervisor.

51. Plaintiff was consistently warned and at times threatened that he should not disclose any lack of resources or other internal reorganization information to the customer (Ford). Instead, Plaintiff was encouraged to give excuses until the customer escalates for support from higher-level management, which caused huge stress and mental exhaustion to Plaintiff. For example, Plaintiff lost his design resource (Ken Lenz) to another engineer/program in early 2020.

52. The affected exhaust system development projects that the plaintiff worked on were F150 diesel 2021 Model year, several Econoline Gasoline projects for different model years as well as transit 2022 vehicle program, which apparently the defendant lost as the OEM decided to award it to another competitor.

53. For one of the projects that got cancelled (transit), the company could not meet customer cost targets because of a lack of a manufacturing site in Mexico close enough to Ford Mexico's plant where the customer vehicle was supposed to be launched.

54. The cancellation of that project by the customer was not a sufficient condition to terminate Plaintiff's employment, as Plaintiff was still working on other several projects, as noted above.

55. Based on customer's (Ford) quality requirements for staffing projects, the company is supposed to be staffed with sufficient, qualified, and experienced engineers

that have worked with the company for several years. In fact, the customer uses the number of years an engineer stays with the defendant as a criterion for awarding businesses.

56. Plaintiff's projects were given either to the new engineer of Caucasian race or Ricki Cohen, who is also a younger Caucasian woman who was employed with the company for about two years.

57. The company was working on acquiring new projects from other OEMs. During this time, other engineers younger in age and not within the same race/ethnicity had less of a workload than Plaintiff and yet they maintained their positions with the company. The company thus discriminated against Plaintiff when it hired a new engineer for a position for which Plaintiff is more qualified.

58. On June 8, 2020, Plaintiff received an invitation for a meeting from the HR Director (Peter Marriot) to take place at his office on June 9, 2020 at 8:30AM and Plaintiff expressed/agreed to do so.

59. On June 9, 2020 (at 8:10AM), Plaintiff arrived at the Eberspaecher North America, Inc. Headquarters located on 29101 Haggerty Road, Novi, MI 48377.

60. On June 9, 2020, the meeting was attended by the HR Manager (Stephanie Andrews), HR director (Peter Marriot) and Plaintiff. Plaintiff never received any record showing the age, names, positions of the people that were let go.

61. On June 9, 2020, the HR Director handed Plaintiff a copy of the termination letter and explained to Plaintiff that this layoff was due to COVID-19. He said that

Plaintiff was selected for the layoff based on his performance review for the 2019 calendar year.   He stated that to make the decision regarding the layoff, the performance review of five product engineers with the same job title were compared. Namely, Product Engineer II positions were compared.

62. Plaintiff was not provided with the list of Product Engineer II employees in his department. However, Plaintiff was able to find out that the affected engineer was a colleague of his who was with a higher pay grade (Lead Engineer Position in another group/manager) but with lower qualifications than Plaintiff's.

63. The long and continuous discriminatory practice within the company regarding his pay grade/career growth or job title issues have been brought to the attention of HR Director (Mr. Peter Marriot) several times since 2018.

64. During the meeting, Plaintiff explained to the HR Director that the Performance review or rating for 2019 year was done by Mr. Nathan Zachary who did not have any direct supervisory responsibility for the 2019. Plaintiff also reminded him that the performance review process for 2019 did not follow the company guidelines and that it was under investigation with the EEOC as it was completed in October 2019.

65. In May 2020, an opening for a Product Engineer position was announced internally by HR in Plaintiff's Engineering department. Accordingly, a new engineer was hired and began employment at least a week before or after the Plaintiff's employment was terminated.

66. Plaintiff's supervisor (Mr. Zachary) was also engaged in the discriminatory practice of disapproving Plaintiff's travel expense reports after his travel to Germany with four other people in September of 2019.

67. While the travel expense reports for the other four people (who are white) who traveled with Plaintiff were approved without any scrutiny by their respective managers, Plaintiff's travel expense reports (lunch, dinner, taxi expenses, hotel stay, etc.) were rejected multiple times under humiliating circumstances but partially approved after his complaint was brought to the HR manager.

68. Other travel expenses such as Plaintiff's use of Plaintiff's personal car to travel from the head office to employers' Plants (Wixom and Brighton) were also systematically discouraged by putting a new time limit of two months with consequences of huge financial loss/damage to Plaintiff for those expenses that took place in 2019 and 2020 as Plaintiff was not able to submit any travel expenses under the so-called "new time limit."

69. As a direct and proximate result of Defendant's discriminatory actions described above, Plaintiff has suffered both economic and non-economic damages, including a decline in mental health (depression and anxiety) and sleep deprivations.

## COUNT I - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (DISCRIMINATION)

70. Plaintiff incorporates all the above allegations by reference.

71.  Plaintiff was employed by Defendant at all relevant times.

72. Title VII prohibits employers from discriminating against any individual regarding compensation, terms, conditions, or privileges of employment because of the employee's race or national origin. See 42 U.S.C. §§ 2000e-2(a)(1-2).

73. Defendant, through its supervisor, Nathan Zachry, Manager, Bob Turkovich, and HR Manager, Stephanie Andrews, and HR Director, Peter Marriott failed to allow career growth or any pay adjustments to Plaintiff's salary despite added responsibilities and a job reclassification because he is an African American man whose national origin is Ethiopian.

74. Plaintiff is a member of a protected class as he is an African American man of Ethiopian national origin.

75. Defendant knew of Plaintiff's protected class because Plaintiff is visibly African American, he is known among co-workers and management that he is of Ethiopian origin as he travels there every year for vacation and to visit relatives. He also has an Ethiopian accent, and Plaintiff engaged in daily conversations and interactions with management and immediate supervisory staff that involved his Ethiopian national origin.

76. Plaintiff was subjected to harm as a direct and proximate result of this discrimination: Defendant withheld promotion opportunities, gave Plaintiff a lower than deserved performance rating, and was ultimately terminated.

77. Others who were similarly situated engineers in Plaintiff's workplace but were not African American and/or of Ethiopian origin were treated more favorably and

not subjected to the same or similar adverse treatment and entitled to higher job titles and paygrades such as Lead Engineer Position, which Plaintiff was denied for a long time.

78. Others who were similarly situated engineers in Plaintiff's workplace, who were less qualified but were not African American and/or of Ethiopian origin were given opportunities for promotion (Lead Engineer), bonuses, and pay adjustments while Plaintiff was not.

79. Plaintiff was subjected to harm as a direct and proximate result of this discrimination: Defendant failed to adjust Plaintiff's pay to reflect his responsibilities, withheld promotion opportunities, and gave Plaintiff a lower than deserved performance rating. Accordingly, Plaintiff suffered non-economic and economic damages including, but not limited to, loss of backpay.

## COUNT II: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (RETALIATION)

80. Plaintiff incorporates all the above allegations by reference.

81. Plaintiff was employed by Defendant at all relevant times.

82. Title VII prohibits employers from retaliating against an employee who has "made a charge, testified, assisted or participated in" any charge of unlawful discrimination.  See 42 U.S.C. §§ 2000e-3(a).

83. Defendant, through its supervisor Nathan Zachry, Manager Bob Turkovich, and HR Manager Stephanie Andrews, and HR Director Peter Marriot gave Plaintiff

lower than deserved performance review ratings in retaliation to his reports of discrimination because he is an African American man whose national origin is Ethiopian.

84. Defendant, through its supervisor Nathan Zachry, Manager Bob Turkovich, and HR Manager Stephanie Andrews, and HR Director Peter Marriot terminated Plaintiff's employment in retaliation to his reports of discrimination because he is an African American man whose national origin is Ethiopian.

85. Plaintiff was subjected to harm as a direct and proximate result of this discrimination: Defendant gave Plaintiff lower than deserved performance ratings and ultimately terminated his employment. Accordingly, Plaintiff suffered non-economic and economic damages including, but not limited to, loss of backpay and frontpay.

## COUNT II - VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

86. Plaintiff incorporates all the above allegations by reference.

87. Plaintiff was employed by Defendant at all relevant times.

88. Plaintiff is a 56-year-old man.

89. The Age Discrimination in Employment Act of 1967, specifically 29 U.S.C. §§ 621 to 634, makes it unlawful for Defendants to discriminate against a person because of his age with respect to any term, condition, or privilege of employment, including hiring, firing, promotion, layoff, compensation, benefits, job assignments, and training.

90. Defendant's acts of discrimination against Plaintiff for his age were intentional and willful.

91. Defendant terminated Plaintiff's employment from a position for which he was qualified during the COVID-19 pandemic because of his age but younger employees in his work group remained employed.

92. But-for Plaintiff's age, Plaintiff would still have been employed despite the COVID-19 pandemic.

93. Plaintiff was subjected to harm as a direct and proximate result of this discrimination: Plaintiff suffered non-economic damages and economic damages including, but not limited to, loss of backpay and frontpay.

## COUNT III - VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT OF 1976 (DISCRIMINATION)

94. Plaintiff incorporates all the above allegations by reference.

95. Plaintiff was employed by Defendant at all relevant times.

96. Title VII prohibits employers from discriminating against any individual regarding compensation, terms, conditions, or privileges of employment because of the employee's race or national origin. See 42 U.S.C. §§ 2000e-2(a)(1-2).

97. Defendant, through its supervisor Nathan Zachry, Manager Bob Turkovich, and HR Manager Stephanie Andrews, and HR Director Peter Marriot failed to make any pay adjustments to Plaintiff's salary despite added responsibilities and a job reclassification because he is an African American man of Ethiopian national origin.

19

98. Defendant, through its supervisor Nathan Zachry, Manager Bob Turkovich, and HR Manager Stephanie Andrews, and HR Director Peter Marriot gave Plaintiff poor performance review ratings because he is an African American man of Ethiopian national origin

99. Plaintiff is a member of a protected class as he is an African American man of Ethiopian national origin.

100. Defendant knew of Plaintiff's protected class because Plaintiff is visibly African American, he has an Ethiopian accent, and Plaintiff engaged in daily conversations and interactions with management and immediate supervisory staff that involved his Ethiopian national origin.

101. Others who were similarly situated engineers in Plaintiff's workplace but were not African American and/or Ethiopian were treated more favorably and not subjected to the same or similar adverse treatment.

102. Others who were similarly situated engineers in Plaintiff's workplace, who were less qualified but were not African American and/or Ethiopian were given opportunities for promotion, bonuses, and pay adjustments while Plaintiff was not.

103. Plaintiff was subjected to harm as a direct and proximate result of this discrimination: Defendant failed to adjust Plaintiff's pay to reflect his responsibilities, withheld promotion opportunities, and gave Plaintiff a lower than deserved performance rating. Accordingly, Plaintiff suffered non-economic damages and economic damages, including but not limited to, loss of backpay.

## COUNT IV - VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT OF 1976 (RETALIATION)

104. Plaintiff incorporates all the above allegations by reference.

105.  Plaintiff was employed by Defendant at all relevant times.

106. Title VII prohibits employers from retaliating against an employee who has "made a charge, testified, assisted or participated in" any charge of unlawful discrimination.  See 42 U.S.C. §§ 2000e-3(a).

107. Defendant, through its supervisor Nathan Zachry, Manager Bob Turkovich, and HR Manager Stephanie Andrews, and HR Director Peter Marriot gave Plaintiff lower than deserved performance review ratings in retaliation to his reports of discrimination because he is an African American man of Ethiopian national origin.

108. Defendant, through its supervisor Nathan Zachry, Manager Bob Turkovich, and HR Manager Stephanie Andrews, and HR Director Peter Marriot terminated Plaintiff's employment in retaliation to his reports of discrimination because he is an African American man of Ethiopian national origin.

109. Plaintiff is a member of a protected class as he is an African American man of Ethiopian national origin.

110. Defendant knew of Plaintiff's protected class because Plaintiff is visibly African American, he has an Ethiopian accent, and Plaintiff engaged in daily

conversations and interactions with management and immediate supervisory staff that involved his Ethiopian national origin.

111. Others who were similarly situated engineers in Plaintiff's workplace but were not African American and/or Ethiopian were treated more favorably and not subjected to the same or similar adverse treatment.

112. Others who were similarly situated engineers in Plaintiff's workplace, who were less qualified but were not African American and/or Ethiopian were given opportunities for promotion, bonuses, and pay adjustments while Plaintiff was not.

113. Others who were similarly situated engineers in Plaintiff's workplace, who were less qualified but were not African American and/or Ethiopian continued to be employed while Plaintiff was not.

114. Plaintiff was subjected to harm as a direct and proximate result of this discrimination: Defendant gave Plaintiff lower than deserved performance ratings and ultimately terminated his employment. Accordingly, Plaintiff suffered non-economic and economic damages including loss of backpay and frontpay.

## **PRAYER FOR RELIEF**

Plaintiff REQUESTS that the court:

a. declare that Defendant's discriminatory practice of withholding promotions, pay adjustments and employment opportunities from him based on his race and national origin and ethnicity unlawfully segregates and classifies employees because of their race and national origin,

22

b. award damages to Plaintiff that reflect his economic losses, including past and future wages as a result of Defendant's failure to promote and ultimately terminate Plaintiff,

c. award Plaintiff compensatory damages sufficient to compensate him for his non-economic losses, including mental anguish and emotional distress, embarrassment and humiliation, and damage to his professional reputation as a result of Defendant's actions,

d. award Plaintiff punitive damages reflecting the blatant disregard Defendant demonstrated for Plaintiff's rights under Title VII, the ADEA and the ELCRA,

e. award Plaintiff the costs and disbursements of this action, including, if applicable, reasonable attorney fees, witness fees, and costs; and

f. grant Plaintiff an award of other and additional legal and/or equitable relief to which he may be entitled.

Respectfully Submitted,

*/s/ Tadesse Gebreegziabher*
By: Dr. Tadesse Gebreegziabher, Plaintiff
 *Pro Se*
 PO Box 2994
 Dearborn, MI 48123
 Telephone: (313) 283-7395
 Email: Gebreeg17@gmail.com

Dated: April 15, 2021

23

## NOTICE OF LIMITED SCOPE ASSISTANCE

This complaint and jury demand were drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). These documents were prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TADESSE GEBREEGZIABHER,

      Plaintiff,

-vs-

EBERSPAECHER NORTH AMERICA, INC.

      Defendant.

_____

Tadesse Gebreegziabher
Plaintiff, *Pro Se*
PO Box 2994
Dearborn, MI 48123
(313) 283-7395
Gebreeg17@gmail.com

_____

## **DEMAND FOR JURY TRIAL**[2]

Plaintiff hereby demands a Trial by Jury in the above-entitled matter.

Respectfully Submitted,

                  */s/ Tadesse Gebreegziabher*
                By: Dr. Tadesse Gebreegziabher, Plaintiff
                  *Pro Se*
                  PO Box 2994
                  Dearborn, MI 48123

_____

[2] This complaint and jury demand were drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). They were prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690

Telephone: (313) 283-7395
Email: Gebreeg17@gmail.com

Dated: April 15, 2021

## NOTICE OF LIMITED SCOPE ASSISTANCE

This complaint and jury demand were drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). These documents were prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Tadesse Gebreegziabher<br>P.O. Box 2994<br>Dearborn, MI 48123 | From: | Detroit Field Office<br>477 Michigan Avenue<br>Room 865<br>Detroit, MI 48226 |
|---|---|---|---|

|  |  |  |
|---|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |  |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2020-03297 | Michael Huffman,<br>Investigator | (313) 226-2290 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)* **This applies to allegations of Age (Wages, Terms/Conditions, Discharge), Retaliation (Wages, Discharge), National Origin (Discharge), and Race (Discharge) Only**

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Deanna E. Wooten

Digitally signed by Deanna E. Wooten
DN: cn=Deanna E. Wooten, o=Equal Employment Opportunity Commission,
ou=Detroit Field Office, email=deanna.wooten@eeoc.gov, c=US
Date: 2021.01.13 13:16:32 -05'00'

January 15, 2021

Enclosures(s)

*For* **Michelle Eisele,**
**District Director**

*(Date Issued)*

cc:

**Attorney Katherine Cser**
**Bodman PLC**
**EBERSPAECHER**
**201 West Big Beaver Road**
**Suite 500**
**Troy, MI 48084**

**Attorney Seth Seidell**
**805 Oakwood Dr.**
**Suite 202**
**Rochester, MI 48307**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request** <u>within 6 months</u> **of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:   Tadesse Gebreegziabher
      P.O. Box 2994
      Dearborn, MI 48123

From:   Detroit Field Office
        477 Michigan Avenue
        Room 865
        Detroit, MI 48226

|   | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2020-02298 | Michael Huffman, Investigator | (313) 226-2290 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[x] Other (briefly state). **This applies to Retaliation (Terms and Condition), Race (Wages and Terms/Conditions) and National Origin (Terms and Condition, Wages) only.**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Deanna E. Wooten

Digitally signed by Deanna E. Wooten
DN: cn=Deanna E. Wooten, o=Equal Employment Opportunity Commission,
ou=Detroit Field Office, email=deanna.wooten@eeoc.gov, c=US
Date: 2021.01.15 13:02:08 -05'00'

Enclosures(s)

*For* **Michelle Eisele,
District Director**

January 15, 2021

*(Date Issued)*

cc:

Attorney Katherine Cser
Bodman PLC
c/o EBERSPAECHER
201 West Big Beaver Road, Suite 500
Troy, MI 48084

Attorney Seth Seidell
805 Oakwood Drive
Suite 202
Rochester, MI 48307

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*